Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| WALTER VOEGTLIN,<br><br>    Plaintiff,<br><br>    v.<br><br>SYNNEX CORPORATION, KEVIN MURAI, DENNIS POLK, FRED BREIDENBACH, LAURIE SIMON HODRICK, HAU LEE, MATTHEW MIAU, DWIGHT STEFFENSEN, ANN VEZINA, THOMAS WURSTER, DUANE ZITZNER, and ANDREA ZULBERTI,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Walter Voegtlin ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### <u>NATURE OF THE ACTION</u>

1.      This is an action against SYNNEX Corporation ("SYNNEX" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of

Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of SYNNEX and Tiger Parent (AP) Corporation, the indirect parent entity of Tech Data Corporation ("Tech Data").[1]

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company's New York subsidiaries conduct business in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

---

[1] Tech Data currently is wholly owned by funds managed by affiliates of Apollo Global Management, Inc. (the "Apollo Funds") and their co-investors.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of SYNNEX common stock.

7.      Defendant SYNNEX provides business process services in the United States and internationally. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "SNX."

8.      Defendant Kevin Murai ("Murai") is Chairman of the Board of the Company.

9.      Defendant Dennis Polk ("Polk") is President, Chief Executive Officer, and a director of the Company.

10.     Defendant Fred Breidenbach ("Breidenbach") is a director of the Company.

11.     Defendant Laurie Simon Hodrick ("Hodrick") is a director of the Company.

12.     Defendant Hau Lee ("Lee") is a director of the Company.

13.     Defendant Matthew Miau ("Miau") is a director of the Company.

14.     Defendant Dwight Steffensen ("Steffensen") is lead director of the Company.

15.      Defendant Ann Vezina ("Vezina") is a director of the Company.

16.     Defendant Thomas Wurster ("Wurster") is a director of the Company.

17.     Defendant Duane Zitzner ("Zitzner") is a director of the Company.

18.     Defendant Andrea Zulberti ("Zulberti") is a director of the Company.

19.     Defendants Murai, Polk, Breidenbach, Hodrick, Lee, Miau, Miau, Steffensen, Vezina, Wurster, Zitzner, and Zulberti are collectively referred to herein as the "Individual Defendants."

20.     Defendants SYNNEX and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

21.     On March 22, 2021, SYNNEX and Tech Data announced that they had entered into a definitive merger agreement under which SYNNEX and Tech Data will combine. Under the terms of the agreement, Apollo Funds will receive an aggregate of 44 million shares of SYNNEX common stock plus the refinancing of existing Tech Data net debt and redeemable preferred shares of approximately $2.7 billion. Upon closing of the Proposed Transaction, SYNNEX shareholders will own approximately 55% of the combined entity, with Apollo Funds owning approximately 45%. The press release announcing the Proposed Transaction states, in pertinent part:

**SYNNEX to Combine with Tech Data Creating a Leading Global IT Distributor**

Establishes Premier Growth Platform with Best-in-Class Capabilities and Offerings

25%+ Accretive to SYNNEX' Non-GAAP Diluted EPS in First Year

Conference Call Today at 5:30 AM PT/8:30 AM ET

NEWS PROVIDED BY
**SYNNEX Corporation; Tech Data**
Mar 22, 2021, 07:51 ET

FREMONT, Calif. and CLEARWATER, Fla., March 22, 2021 /PRNewswire/ -- SYNNEX Corporation (NYSE: SNX) and Tech Data today announced they have entered into a definitive merger agreement under which SYNNEX and Tech Data will combine in a transaction valued at approximately $7.2 billion, including net debt. The combined company, with approximately $57 billion in estimated pro forma annual revenues and a team of over 22,000 associates and colleagues, will provide customers and vendors with expansive reach across products, services, and geographies to accelerate technology adoption.

\*       \*       \*

**Key Transaction Details**

- Under the terms of the agreement, Apollo Funds will receive an aggregate of 44 million shares of SYNNEX common stock plus the refinancing of existing Tech Data net debt and redeemable preferred shares of approximately $2.7 billion.
- Upon closing of the transaction, SYNNEX shareholders will own approximately 55% of the combined entity, with Apollo Funds owning approximately 45%.
- Rich Hume will lead the combined company as CEO. Dennis Polk will be Executive Chair of the Board of Directors and will take an active role in the ongoing strategy and integration of the business, among other responsibilities.
- The combined company will have an eleven-member board, including Hume, with six individuals appointed by SYNNEX and with Apollo Funds to have Board designation rights based on ownership, initially including four total directors, two of whom will be independent.
- Non-GAAP diluted EPS accretion of more than 25% is expected in year one post close, with further accretion expected in year two.
- Net optimization and synergy benefits of $100 million are expected in the first year after closing, achieving a minimum of $200 million by the end of the second year.
- The combined company will benefit from a strong financial foundation and an investment grade profile. Based on LTM pro-forma adjusted EBITDA of approximately $1.5 billion and expected combined debt of approximately $4.0 billion at close, debt-to-adjusted EBITDA is expected to be approximately 2.7x at transaction close and is expected to decline to approximately 2x within 12 months.

The transaction is expected to close in the second half of calendar year 2021, subject to the satisfaction of customary closing conditions, including approval by SYNNEX stockholders and regulatory approvals.

MiTAC Holdings Corporation and its affiliates, which collectively owned approximately 17% of SYNNEX shares as of January 22, 2021, have agreed to vote their shares in favor of the transaction. Until the transaction is completed, the companies will continue to operate independently.

\*       \*       \*

**About SYNNEX Corporation**

SYNNEX Corporation (NYSE: SNX) is a Fortune 200 corporation and a leading provider of a comprehensive range of distribution, systems design, and integration services for the technology industry to a wide range of enterprises. Founded in 1980, SYNNEX Corporation operates in numerous countries throughout North and South America, Asia-Pacific, and Europe. Additional information about SYNNEX may be found online at synnex.com.

**About Tech Data**

Tech Data connects the world with the power of technology. Our end-to-end portfolio of products, services and solutions, highly specialized skills, and expertise

in next-generation technologies enable channel partners to bring to market the products and solutions the world needs to connect, grow, and advance. Tech Data is ranked No. 90 on the Fortune 500® and has been named one of Fortune's World's Most Admired Companies for 11 straight years. To find out more, visit www.techdata.com or follow us on Twitter, LinkedIn, Facebook and Instagram.

**About Apollo**

Apollo is a leading global investment manager with offices in New York, Los Angeles, San Diego, Houston, Bethesda, London, Frankfurt, Madrid, Luxembourg, Mumbai, Delhi, Singapore, Hong Kong, Shanghai and Tokyo, among others. Apollo had assets under management of approximately $455 billion as of December 31, 2020 in credit, private equity and real assets funds. For more information about Apollo, please visit www.apollo.com.

22.     On May 3, 2021, the Company filed a Schedule 14A Preliminary Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B.  The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

23.     The Proxy Statement, which recommends that SYNNEX shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) SYNNEX's and Tech Data's financial projections; (ii) the financial analyses performed by SYNNEX's financial advisor, Duff & Phelps, LLC ("Duff & Phelps"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Duff & Phelps; and (iv) potential conflicts of interest involving Company insiders.

24.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Board; (iii) Reasons for Recommending the Adoption of the Merger and the Merger Agreement; (iv) Certain SYNNEX Projections; (v) Opinion of Duff & Phelps, LLC; and (vi) Interests of Directors and Executive Officers in the Merger.

25.     Unless and until the material misstatements and omissions (referenced below) are

remedied before the anticipated shareholder vote on the Proposed Transaction, SYNNEX shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning SYNNEX's and Tech Data's Financial Projections**

26.     The Proxy Statement omits material information concerning SYNNEX's and Tech Data's financial projections.

27.     With respect to the SYNNEX Financial Projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) SYNNEX revenue, (ii) SYNNEX Non-GAAP Net Income, and (iii) SYNNEX adjusted EBITDA; and (2) a reconciliation of all non-GAAP to GAAP metrics.

28.     With respect to the Tech Data Projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Tech Data revenue, and (ii) Tech Data Adjusted EBITDA (including Tech Data's GBO 2 Program); and (2) a reconciliation of all non-GAAP to GAAP metrics.

29.     With respect to the SYNNEX Adjusted Tech Data Projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Tech Data Adjusted revenue, and (ii) Tech Data Adjusted EBITDA (including Tech Data's GBO 2 Program); and (2) a reconciliation of all non-GAAP to GAAP metrics.

30.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company.

Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[2]

32.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.  Material Omissions Concerning Duff & Phelps' Analyses**

33.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Duff & Phelps.

34.     The Proxy Statement fails to disclose the following concerning Duff & Phelps'

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited June 4, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

"*Income Approach (Discounted Cash Flow Analysis) Summary*": (1) the future unlevered free cash flows attributable to Tech Data for the fiscal years ending January 31, 2022 through January 31, 2024, and all underlying line items; (2) Tech Data's terminal value; (3) the individual inputs and assumptions underlying the (i) perpetuity growth formula assuming a 2.5% terminal growth rate, and (ii) discount rates ranging from 10.0% to 11.0%; (4) Tech Data's after-tax cost of debt; and (5) the rate of return that security holders could expect to realize on alternative investment opportunities with similar risk profiles.

35.     With respect to Duff & Phelps' "*Summary of Selected Public Companies / Selected M&A Transactions Analyses*," the Proxy Statement fails to disclose the individual inputs and assumptions underlying the (i) LTM EBITDA multiple ranged from 9.0x to 10.0x, (ii) NTM EBITDA multiple ranged from 8.5x to 9.5x, and (iii) NTM + 1 EBITDA multiple ranged from 8.0x to 9.0x.

36.     The Proxy Statement fails to disclose the following concerning Duff & Phelps' "*Summary of Synergies' Analysis*": (1) the Terminal Value of all Net Synergies after the fiscal year ending January 31, 2024; (2) the individual inputs and assumptions underlying the perpetuity growth formula assuming a 2.5% terminal growth rate; and (3) discount rates ranging from 11.75% to 13.75%.

37.     The valuation methods, underlying assumptions, and key inputs used by Duff & Phelps in rendering its purported fairness opinion must be fairly disclosed to SYNNEX shareholders. The description of Duff & Phelps' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, SYNNEX shareholders are unable to fully understand Duff & Phelps' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in

determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Duff & Phelps

38.     The Proxy Statement omits material information concerning potential conflicts of interest involving Duff & Phelps.

39.     The Proxy Statement provides that "Duff & Phelps is entitled to be paid [] fees at Duff & Phelps' standard hourly rates for any time incurred should Duff & Phelps be called upon to support its findings subsequent to the delivery of its Opinion and/or assist in the preparation or review of documents associated with the Merger."

40.     The Proxy Statement, however, fails to disclose: (1) Duff & Phelps' standard hourly rates; and (2) whether Duff & Phelps received or expects to receive fees in connection with supporting its findings subsequent to the delivery of its Opinion and/or assisting in the preparation or review of documents associated with the Merger.

41.     The Proxy Statement further provides that, "[d]uring the two years preceding the date of its Opinion, Duff & Phelps provided financial opinions and valuation services to SYNNEX, and provided valuation services to Tech Data's private equity sponsor, Apollo and its affiliates (which we collectively refer to as "Apollo"). For these prior engagements, Duff & Phelps received customary fees, expense reimbursement, and indemnification."

42.     The Proxy Statement, however, fails to disclose the timing and nature of the past services Duff & Phelps and/or its affiliates provided SYNNEX, Tech Data, Apollo, and/or their affiliates, including the amount of compensation Duff & Phelps received or expects to receive for providing each service within the past two years of the date of its fairness opinion. *See* 17 C.F.R.

§ 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

43.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

44.     The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

45.     The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

46.     The Proxy Statement provides the following:

*The directors and executive officers of SYNNEX have interests and arrangements that may be different from, or in addition to, those of SYNNEX' stockholders.*

When considering the recommendations of the Board with respect to the proposals described in this proxy statement, SYNNEX' stockholders should be aware that the directors and executive officers of SYNNEX have interests in the Merger that are different from, or in addition to, those of SYNNEX' stockholders generally. These interests include the continued employment of certain executive officers of SYNNEX by the combined company, the continued service of certain directors of SYNNEX as directors of the combined company, the treatment in the Merger of outstanding equity, equity-based and incentive awards, severance arrangements, other compensation and benefit arrangements, and the right to continued indemnification of former directors and officers by the combined company.

47.     The Proxy Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers

and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

48.     Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

49.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

52.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and

misleading Proxy Statement.

53.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

54.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

55.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned

company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

60.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 4, 2021                                          Respectfully submitted,

                                                            **HALPER SADEH LLP**

                                                            By: /s/ Daniel Sadeh
                                                            Daniel Sadeh, Esq.
                                                            Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                            667 Madison Avenue, 5th Floor
                                                            New York, NY 10065
                                                            Telephone: (212) 763-0060
                                                            Facsimile: (646) 776-2600
                                                            Email: sadeh@halpersadeh.com
                                                                   zhalper@halpersadeh.com

*Counsel for Plaintiff*